IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alexis Benson and Kevin Carberry, Sr. and/on behalf of K.J.C.,[1] <br><br> Plaintiffs, <br><br> vs. <br><br> Lancaster County School District, Superintendent Jonathan Phipps, Lindsay Marino, Nicole Lee, the South Carolina Department of Education, Barbara Drayton, Kimberly Blackburn, Vernie Williams, David Duff, Meredith Seibert, Brian P. Murphy, Perry Zirkel, and Mitchell Yell, <br><br> Defendants. | C/A No.: 0:23-cv-1488-SAL-SVH <br><br><br><br><br><br><br><br><br> ORDER AND NOTICE |

Alexis Benson ("Ms. Benson") and Kevin Carberry, Sr. ("Mr. Carberry"), proceeding pro se,[2] filed this civil action on behalf of themselves and their

---

[1] In accordance with Fed. R. Civ. P. 5.2(a)(3), the undersigned has redacted the minor's name to address privacy concerns. Plaintiffs should include only the minor's initials in future filings.

[2] Ms. Benson has filed an application to proceed in district court without prepaying fees or costs, which the court interprets as a motion for leave to proceed in forma pauperis. [ECF No. 2]. The undersigned declines to rule on the motion at this time because Mr. Carberry has neither paid the filing fee nor filed a motion to proceed in forma pauperis. "[A]lthough only one filing fee needs to be paid, if multiple plaintiffs seek to proceed in forma pauperis, each such plaintiff must qualify for in forma pauperis status and the plaintiffs must

1

minor child, K.J.C. (collectively "Plaintiffs"), against Lancaster County School District ("LCSD"), Superintendent Jonathan Phipps ("Superintendent Phipps"), Lindsay Marino ("Ms. Marino"), Nicole Lee ("Ms. Lee"), the South Carolina Department of Education ("SCDOE"), Barbara Drayton ("Ms. Drayton"), Kimberly Blackburn ("Ms. Blackburn"), Vernie Williams ("Mr. Williams"), David Duff ("Mr. Duff"), Meredith Seibert ("Ms. Seibert"), local hearing officer Brian P. Murphy ("LHO Murphy"), state review officer ("SRO") Perry Zirkel ("Zirkel"), and SRO Mitchell Yell ("SRO Yell") (collectively "Defendants"). Plaintiffs attempt to assert causes of action based on violations of various sections of the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, Title VII of the Civil Rights Act of 1964, § 2000(e), *et seq.*, the Religious Freedom Restoration Act ("RFRA"), negligence, defamation, and alleged criminal acts including money laundering, racketeering, embezzlement, theft, and obstruction of justice. Pursuant to 28 U.S.C. § 636(b)(1) and Local Civ.

---

establish that they cannot, singly or together, pay the filing fee." *Roberts v. Aviles*, C/A No. 10-5916 (FSH), 2010 WL 4939927, at *1 (D.N.J. Nov. 30, 2010) (citing *Anderson v. California*, C/A No. 10-2216, 2010 WL 4316996 (S.D. Cal. Oct. 27, 2010); *Darden v. Bancorp, Inc.*, C/A No. 09-2970, 2009 WL 5206637 (E.D. Cal. Dec. 23, 2009).

Rule 73.02(B)(2)(e) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge.

I.   Factual and Procedural Background

Ms. Benson and Mr. Carberry are attempting to bring suit on behalf of themselves and their 11-year-old son, K.J.C. [ECF No. 1 at 5]. They claim K.J.C. has experienced gastrointestinal deficits on-and-off over a five-year period and was diagnosed with autism-spectrum disorder at age six and general and social anxiety, attention deficit disorder, central auditory processing disorder, and sensory processing disorder at age four. *Id.* Plaintiffs are involved in ongoing litigation with Fort Mill School District, C/A No. 0:22-614-SAL-SVH (D.S.C.). They allege Mr. Carberry sold his home around May or June 2022 and they switched K.J.C. from Fort Mill School District to Lancaster School District following Mr. Carberry's move. *Id.* at 11.

Plaintiffs indicate pediatric clinical psychologist Laurie Gillespie ("Dr. Gillespie") performed an independent educational evaluation ("IEE") in July 2022 that they provided to LCSD that same month. *Id.* at 11, 18. They state individualized education program ("IEP") meetings were held in August September, and October 2022, and LCSD failed to give equal consideration to all IEP team members, including K.J.C.'s grandparents, their special educational advocate, and Dr. Gillespie, and failed to develop, review, and

3

revise K.J.C.'s IEP based on the IEE. *Id.* at 11, 18. They claim that during the August 10, 2022 IEP meeting, Principal Johnson and Ms. Marino agreed to provide K.J.C. a one-on-one paraprofessional, but Ms. Marino denied the agreement on November 29, 2022, prior to reviewing the recording of the meeting and conceding her error on December 13, 2022. *Id.* at 19.

Plaintiffs assert they filed due process complaints ("DPCs") on November 29, 2022, and February 21 and 22, 2023, for the denial of supplementary aids and service, related services, and non-academic services. *Id.* at 12. They claim LHO Murphy was not impartial, denied their request for recusal, denied their DPCs, treated them differently than parties represented by counsel, and defamed Ms. Benson by stating in his orders that she attacked and demeaned LCSD and its counsel. *Id.* at 12–13. They allege DHO Murphy conspired with Ms. Drayton to neglect their rights. *Id.*

They claim the SROs ignored their arguments and the IDEA, included defamatory remarks about Ms. Benson in their orders, and conspired with LHO Murphy and Ms. Drayton to neglect K.J.C.'s rights under the IDEA and the constitution. *Id.* at 13–15. They allege SCDOE wrote SRO Yell's August 2023 order. *Id.* at 15.

Plaintiffs claim they have exhausted all administrative options. *Id.* at 4, 15. They maintain SCDOE is incapable of providing impartial due process procedures in accordance with the IDEA and the constitution. *Id.* at 4. They

4

assert SCDOE has denied due process hearing requests and has failed to properly supervise the due process hearing procedures of its officers. *Id.* They claim LCSD did not meaningfully consider the input of all individuals involved in developing K.J.C.'s IEP. *Id.* They specifically allege LCSD has declined to provide equestrian therapeutic recreation for K.J.C. for two years, requiring them to pay for the services out-of-pocket. *Id.* at 28–29. They claim LCSD has further declined to provide other services recommended by Dr. Gillespie, including a Talisman summer program, neurofeedback therapy, and applied behavior analysis ("ABA") therapy. *Id.* at 29. They indicate K.J.C. was not provided a one-to-one paraprofessional aid for the majority of the time LCSD agreed it should be included in his IEP. *Id.* However, they admit they were later informed a paraprofessional was not necessary because of the small, 12 to one ratio of students to teacher in the self-contained classroom setting. *Id.* They claim K.J.C. was denied supplemental aids over the summer, although it appears K.J.C. was enrolled in Fort Mill School District at that time. *Id.* at 30.

Plaintiffs seek damages, relief and reimbursement of comparable education care costs and comparable attorney fees from August 15, 2022, to present, as well as lost wages and pain and suffering for themselves and their minor child. *Id.* at 3. They request an injunction "ordering defendants to refrain from violating all students and the Plaintiff's Amendment rights." *Id.* at 46. They also request compensatory damages for anguish, emotional distress,

5

pain, and suffering, as well as punitive damages and attorney fees. *Id.* They ask that the court order a third-party or out-of-state investigation and audit of the special education department procedures, practices, and finances of LCSD and SCDOE. *Id.* They appear to be requesting damages as follows: $3.3 million from SCDOE, $1.44 million from LCSD, $1 million each from LHO Murphy, SRO Yell, and SRO Zirkel, $1 million each from Ms. Drayton, $1 million total from Ms. Marino, Superintendent Phipps, and Ms. Lee, and $1 million each from Mr. Duff, Ms. Seibert, Ms. Blackburn, and Mr. Williams. *Id.* at 47–48.

II. Discussion

    A.    Standard of Review

Plaintiffs have attempted to file their complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss a case upon a finding that the action fails to state a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

    B.    Analysis

        1.    Ms. Benson and Mr. Carberry Cannot Bring Pro Se Claims on Behalf of K.J.C.

Ms. Benson and Mr. Carberry appear to indicate they are proceeding on behalf of themselves and K.J.C. *See* ECF No. 1. Although Ms. Benson and Mr. Carberry may litigate their own claims pro se, *see* 28 U.S.C. § 1654, because they are not attorneys licensed to practice in this court, they cannot litigate on behalf of K.J.C. *See Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th

7

Cir. 2005) ("[N]on-attorney parents generally may not litigate the claims of their minor children in federal court."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[W]e consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others.").

Contrary to Ms. Benson's and Mr. Carberry's assertion, the Supreme Court's holding in *Winkelman v. Parma City School District*, 550 U.S. 516 (2007), does not allow them to proceed pro se on behalf of K.J.C. The Court specifically declined to address "whether [the] IDEA entitles parents to litigate their child's claim pro se," given its holding that that "IDEA grants parents independent, enforceable rights," separate from those of their children. *Id.* at 535. Because the Supreme Court declined to address the issue, this court must follow Fourth Circuit precedent. Although Ms. Benson and Mr. Carberry may proceed pro se on their rights under the IDEA, they may not proceed pro se in pursuing K.J.C.'s claims.

If no attorney enters an appearance on behalf of K.J.C. within the time permitted in this order, all claims brought on his behalf are subject to summary dismissal.

        2.     Individual Defendants Subject to Summary Dismissal

To the extent Plaintiffs attempt to sue defendants other than SCDOE and LCSD in their individual capacities, the individual defendants are subject to summary dismissal for several reasons. Plaintiffs fail to make specific

factual allegations to support any cause of action against Superintendent Phipps, Ms. Lee, Ms. Blackburn, and Mr. Williams. *See generally* ECF No. 1. They mention Lydia Quinn as a defendant, but fail to include her name in the caption or to make specific factual allegations against her. [ECF No. 1 at 1]. Therefore, Superintendent Phipps, Ms. Lee, Ms. Blackburn, Mr. Williams, and Ms. Quinn are subject to summary dismissal based on an absence of allegations to support causes of action against them.

Although it is not entirely clear from the complaint, several of the defendants appear to be attorneys representing SCDOE and LCSD, who are generally "immune from liability to third parties arising from the performance of [their] professional activities on behalf of and with the knowledge of [their] clients." *See Couram v. South Carolina Department of Motor Vehicles*, C/A No. 3:15-4870-MBS-PJG, 2016 WL 4204070, at \*3 (D.S.C. Aug. 10, 2016) (quoting *Pye v. Estate of Fox*, 633 S.E.2d 505, 509 (S.C. 2006)). Although there is an exception to this rule where an attorney has an independent duty to a third party and conspires to violate that duty, Plaintiffs' assertion that the attorneys owed them a duty and conspired to violate it is not sufficient to show that such a duty or conspiracy existed in the absence of supporting information. *See id.* (citing *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 601 (1995)). Therefore, the attorney defendants, who include, but may not be limited to Ms. Drayton, Mr. Duff, and Ms. Seibert, are subject to summary dismissal.

LHO Murphy, SRO Zirkel, and SRO Yell are judicial officers, who enjoy absolute immunity "for their judicial acts, even when such acts are in excess of their jurisdiction, and alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (internal quotation omitted). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[J]udicial immunity is not overcome by allegations of bad faith or malice." *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("immunity applies even when the judge is accused of acting maliciously and corruptly); *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19 (1982) (allegations of malice are insufficient to overcome qualified immunity). "The doctrine of absolute immunity has been extended 'to certain others who perform functions closely associated with the judicial process,'" including "administrative officials exercising independent quasi-judicial powers." *B.D.S. v. Southold Union Free Sch. Dist.*, C/A Nos. 08-1319 (SJF) (WDW), 08-1864 (SJF) (WDW), 2009 WL 1875942, at *19 (E.D.N.Y. June 24, 2009) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), and *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)). Courts have extended absolute judicial immunity to hearing officers, including SROs, who decide cases brought under the IDEA. *See B.J.S. v. State Educ. Department/University of New York*, 699 F. Supp. 2d 586, 595 (W.D.N.Y. 2010); *B.D.S.*, 2009 WL 1875942, at *19; *DeMerchant v.*

10

*Springfield Sch. Dist.*, C/A No. 1:05-316, 2007 WL 495240, at *3–4 (D. Vt. Feb. 9, 2007). Accordingly, it appears LHO Murphy, SRO Zirkel, and SRO Yell are entitled to absolute judicial immunity for all their judicial acts, including any allegations of defamation related to the contents of their orders.

"[T]he IDEA does not create a cause of action against school officials in their individual capacities." *Benson on behalf of K.C. v. Fort Mill School District/York County District 4*, C/A No. 0:22-614-SAL-SVH, 2023 WL 3017832, at *3–4 (D.S.C. Apr. 20, 2023) ("*Benson I*") (citing *Dias-Fonseca v. Puerto Rico*, 451 F.3d 13 (1st Cir. 2006); *Bradley v. Arkansas Dept. of Ed.*, 301 F.3d 952, 957 n.6 (8th Cir. 2002); *J.W. v. Johnston Cnty. Bd. of Educ.*, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012); *Justice ex rel. Son v. Farley*, 2014 WL 229127, at *8 (E.D.N.C. Jan. 21, 2014); *D.W. by and through Williams v. Chesterfield Cnty. Schools*, 2018 WL 3098121, at *8 n.8 (E.D. Va. June 5, 2018); *Muller v. Henrico Cnty. Sch. Bd.*, 2019 WL 3860199, at *4 (E.D. Va. Aug. 16, 2019). Neither Title II of the ADA nor Section 504 authorize individual liability. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir. 1999) (providing Title II of the ADA does not recognize a cause of action for discrimination or retaliation against private individuals, only public entities); *Young v. Barthlow*, C/A No. RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007) (explaining that because both the ADA and Section 504 provide redress for discrimination by a "public entity," they do not contemplate

11

individual liability) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Dunion v. Thomas*, 457 F. Supp. 2d 119 (D. Conn. 2006); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000). Accordingly, Plaintiffs' claims brought against school officials in their individual capacities under the IDEA, Title II of ADA, and Section 504 are subject to summary dismissal.

    4.    Ms. Benson and Mr. Carberry Cannot Proceed on their Own Claims Under the ADA and Section 504

Title II of the ADA and Section 504 prohibit not only discrimination directed toward a disabled individual, but also discrimination against individuals based on their association with disabled individuals. *Stukes v. School Board of City of Virginia Beach*, C/A No. 2:18-644, 2019 WL 13298146, at *7 (E.D. Va. Nov. 21, 2019) (citing *A Helping Hand, LLC v. Balt. Cty.*, 515 F.3d 356, 363 n.3 (4th Cir. 2008)). "[A]ssociational discrimination" cases "'require[ ] a separate and distinct denial of a benefit or service to a non-disabled person' and 'may not be premised on a derivative benefit or harm based on treatment towards a disabled person.'" *Id.* (citing *D.N. v. Louisa Cty. Pub. Sch.*, 156 F. Supp. 3d 767, 773 (W.D. Va. 2016) (quoting *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-cv-0676-G-BH, 2010 U.S. Dist. LEXIS 108900, at *5 (N.D. Tex. Sept. 13, 2010)). To state an associational discrimination claim

under Section 504 or the ADA, a plaintiff "must plausibly allege: (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination." *Id.* (citing *S.K.*, 146 F. Supp. 3d at 712 (quoting *Schneider v. Cty. of Will*, 190 F. Supp. 2d 1082, 1091 (N.D. Ill. 2002)). Ms. Benson and Mr. Carberry have not asserted sufficient facts to support their own claims under Title II of ADA and Section 504 because they have neither stated plausible claims that LCSD or SCDOE discriminated against them because of their association with K.J.C. or that they suffered a direct injury as a result of such discrimination. Therefore, Plaintiffs' claims under Title II of the ADA and Section 504 are subject to summary dismissal.

        5.     No Private Right of Action to Pursue Criminal Charges

Plaintiffs cite to several crimes and some specific federal criminal statutes they allege Defendants violated. The statutes provide no private remedy for citizens to invoke in a civil suit, as they are "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind [i]s available to anyone." *Cort v. Ash*, 422 U.S. 66, 80 (1975). *see also, e.g., Phillips v. North Carolina*, No. 5:19-CV-111-D, 2020 WL 2150526 (E.D.N.C. Mar. 24, 2020) (dismissing case for lack of subject matter jurisdiction despite pro se plaintiff's citation to federal criminal statutes as basis for civil claim); *Almond*

13

*v. Bank of New York Mellon*, No. 1:18-cv-3461-MLB-JKL, 2018 WL 4846002, at *2 (N.D. Ga. July 20, 2018) (finding lack of subject matter jurisdiction because "even if the Complaint could fairly be read as attempting to assert claims under 18 U.S.C. §§ 152 and 1001 against Defendant, those Claims cannot give this Court original jurisdiction because there is no private right of action under either statute."); *Ali v. Timmons*, No. 04-CV-0164E, 2004 WL 1698445, at *2 (W.D.N.Y. July 26, 2004) ("Initially, plaintiff's claims for criminal theft and embezzlement must be dismissed because there is no private right of action, either express or implied, under the criminal statute raised by plaintiff, 18 U.S.C. § 641."); *House v. Hastings*, No. 91 Civ. 3780 (JSM), 1992 WL 44370, at *1 n.1 (S.D.N.Y. Feb. 21, 1992) ("Originally this action was brought under 18 U.S.C. 1001 and 18 U.S.C. 1002, which do not readily provide for a private right of action."). Accordingly, Plaintiffs cannot proceed with causes of action based on various criminal statutes that include no private rights of action.

### 6. Additional Causes of Action

Plaintiffs attempt to bring a cause of action under 42 U.S.C. § 1983, based on allegations that Defendants violated their constitutional rights under the First, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fourteenth, and Fifteenth Amendments. They generally allege Defendants engaged in collusion and conspired to violate their rights and caused them irreparable harm, but

fail to connect Defendants' actions to the rights they claim were violated. Plaintiffs' allegations are too vague and conclusory to state a claim pursuant to § 1983. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990) (finding conclusory allegations of discrimination and harassment do not state a claim upon which relief may be granted). In addition, the Fourth Circuit has held that Congress did not intend for IDEA rights to be enforceable under § 1983. *See Sellers v. School Bd. of Mannassas, Va.*, 141 F.3d 524 (4th Cir. 1998) ("Because IDEA provides a comprehensive remedial scheme for violations of its own requirements, we hold that parties may not sue under section 1983 for an IDEA violation.").

Plaintiffs appear to allege Defendants conspired to deprive them of equal protection in violation of 42 U.S.C. § 1985(3). This provision requires a § 1985 conspiracy, meaning Plaintiffs must show an agreement or "meeting of the minds" by defendants to violate their constitutional rights. *McDaniel v. Charlotte-Mecklenburg Schools*, C/A No. 3:18-205-FDW-DCK, 2018 WL 11486879, at *4 (W.D.N.C. May 11, 2018) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). "Allegations of parallel conduct and a bare assertion of a conspiracy are not enough for a § 1985 claim to proceed." *Id.* (citing *A Soc'y Without a Name v. Va.*, 655 F.3d 342, 347 (4th Cir. 2011)). Because Plaintiffs merely allege a conspiracy, but cite nothing to support its existence, they cannot proceed on a § 1985 claim. Because "[a] cause of action based upon §

15

1986 is dependent upon the existence of a claim under § 1985," *Trerice v. Simmons*, 755 F.2d 1081, 1085 (4th Cir. 1985), Plaintiffs' claim under 42 U.S.C. § 1986 is also subject to summary dismissal.

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs' 53-page complaint asserts multiple legal conclusions, but, in many instances, fails to connect individual defendants, operative facts, and legal conclusions. *See, e.g.,* ECF No. 1 at 3–4 (listing multiple alleged violations without providing supporting facts). To the extent Plaintiffs intend to proceed against Defendants on any other claims not specifically addressed herein, they have not alleged sufficient facts to state any other plausible claims for relief against any defendant. Accordingly, in the absence of an amended pleading, all other purported causes of action are subject to summary dismissal.

   7.    Request for Change of Venue

Plaintiffs argue the law allows them to file their claim in any district court and request a change of venue to the United States District Court for the District of Western North Carolina. [ECF No. 1 at 5]. The undersigned denies Plaintiffs' request for the reasons explained in Judge Lydon's order in *Benson I*, 2023 WL 3017832, at *2–3 (explaining that 28 U.S.C. § 1391(b) allows a party to "bring a civil action in a judicial district (1) where any defendant resides if all defendants are residents of the state where the district is located or (2) a

judicial district in which a substantial part of the events giving rise to the claim occurred" and denying request for change in venue because: (1) Plaintiffs "cannot show that all Defendants are residents of North Carolina" and (2) "[t]he events giving rise to these claims occurred within South Carolina").

    8.  Request to Subpoena Correspondence

Plaintiffs request the court authorize them to subpoena alleged correspondence between LHO Murphy and Ms. Drayton. The undersigned denies Plaintiffs' request at this time because many of their claims are subject to summary dismissal and the case is not in proper form for service at this time.

NOTICE CONCERNING AMENDMENT

The undersigned permits Plaintiffs until **June 5, 2023**, to retain counsel authorized to practice in this court to represent K.J.C.'s interests. If no counsel enters an appearance on the record on behalf of K.J.C. by June 5, 2023, the undersigned will recommend to the district judge that any claims that might properly be brought on behalf of K.J.C. be dismissed without prejudice.

Although Plaintiffs have failed to allege sufficient facts to support most of their claims, they are permitted an opportunity to cure the deficiencies in the complaint through amendment. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619 (4th Cir. 2015). Plaintiffs may file an amended complaint by **June 5, 2023**, along with any appropriate service documents. Plaintiffs are

17

reminded an amended complaint replaces the original complaint and should be complete in itself.[3] *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted). If Plaintiffs file an amended complaint and the undersigned finds they may proceed in forma pauperis, the undersigned will conduct screening of the amended complaint pursuant to 28 U.S.C. § 1915A. If Plaintiffs fail to file an amended complaint or fail to cure the deficiencies identified above, the undersigned will recommend to the district judge that all the claims except for Ms. Benson's and Mr. Carberry's claims under the IDEA be dismissed without leave for further amendment.

    IT IS SO ORDERED.

May 15, 2023                                              Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

---

[3] Plaintiffs have already attempted to file an amended complaint. [ECF No. 5]. However, the court cannot accept the amended complaint because Plaintiffs failed to sign it. The undersigned further notes the amended complaint contains many of the same deficiencies identified herein.